EMERSON, FISHER & CO. *v.* JOHN DYE ET AL.

[Abstract Kentucky Law Reporter, Vol. 6—592.]

**Release of Guarantor by Extension of Time.**

If a creditor does any act inconsistent with the rights of the guarantor the latter is thereby released. A new contract can not be made between the debtor and creditor without his consent without releasing him, but it is only new contracts not contemplated by the guaranty that will release the guarantor.

**Construction of Contract of Guaranty.**

A contract of guaranty is to be construed liberally but this does not mean that the words of the guaranty are to be given an unnatural meaning.

**Continuing Contract of Guaranty.**

If the contract of guaranty is a continuing one notice of the various transactions need not be given the guarantor, and when he undertakes that a third party shall pay, or that in case of a default he will pay, he is not entitled to notice of default nor is any demand of payment of the principal necessary.

APPEAL FROM KENTON CIRCUIT COURT.

February 5, 1885.

OPINION BY JUDGE HOLT:

The appellants, Emerson, Fisher & Co., and appellee, John Dye, made the contract of guaranty:

Cincinnati, February 15, 1876.

This agreement entered into this 15th day of February 1876, between Emerson, Fisher & Co. of Cincinnati, Ohio, of the first part, and John Dye, of Cold Springs, Ky., of the second part, witnesseth,

1. The parties of the first part hereby agree to sell Dye, Bros. & Co. of the city of Coulumbus Tennessee, buggies and carriages, not to exceed in amount at any time, the sum of thirty five hundred dollars.

2. The party of the second part hereby binds and obligates himself, his heirs and assigns, that in case of default in payment by the said Dye Bros. & Co. to the parties of the first part (for said buggies) that he, his heirs or assigns, will pay to the said parties of the first part any deficiency or amount that may be due upon settlement to the said Emerson, Fisher & Co. by Dye, Bros. & Co. not exceeding, however, in the amount the sum of thirty five hundred dollars.

Emerson, Fisher & Co.
John Dye & Co.

No definite time for payment by Dye Bros. & Co. to the appellants was fixed when the sales were made. One witness the appellant (Lowe Emerson) says: "No specific time of credit was given; but the goods were to be paid for as fast as sold; that on June 20, 1876, Dye Bros. & Co. had quit business and came to plaintiff's place of business in Cinncinnati Ohio, and the account was there examined by one of them, who then said that they could not pay until 60 and 90 days, in which time they could make collections from their own sales; and thereupon executed the two notes filed with the petition."

Another witness (J. F. Dye of Dye Bros. & Co.) testified that "said firm bought buggies from plaintiffs on no specified terms as to time of payment, but the understanding was that Dye Bros. were to pay as fast as they could collect from their sales; that they had quit business and come to Cinncinnati, and on June 20, 1876 had a

settlement with plaintiffs and told them they had outstanding notes from purchasers and that as soon as these could be collected they would pay balance, which would be in about 60 or 90 days; that thereupon by agreement the two notes filed with petition were executed and the receipt shown in this bill of evidence was given; that Dye failed to collect enough to pay, their notes proving worthless, and witness so informed plaintiffs after the maturity of the two notes of Dye, Bros. & Co."

The balance found owing on June 20, 1876 was $1,378.98, and it was then agreed between appellants and Dye Bros. & Co (the appellee John Dye a party to the agreement) that it should be paid in equal instalments in sixty and ninety days; and notes were then executed accordingly, the account being receipted by the notes being credited thereon; and it is claimed, that thereby the appellee, John Dye was released as guarantor.

It is a general rule that if the creditor does any act inconsistent with the rights of the guarantor, the latter is thereby released.

He has the right to fix the terms upon which he will be bound, and having done so, a new contract can not be made without his consent, without releasing him.   There can be no material departure from the terms of the guarantor without his consent and he is released by any extension of credit without his consent.

The object, however, of a letter of credit is, that the party may have time to pay, and the prolonging of the time for payment by the principal debtor or the taking of his note should not discharge the guarantor unless it constitutes a new contract.

He should be held for all, that may be done for his principal, that was contemplated by the guaranty; and even a gift of time to the latter will not release the former, unless some new arrangement, not contemplated when the guaranty was given, is made, whereby the circumstances are altered without his consent (*Benjamin v. Hilliard et al.* 23 How. 149.

The authorities do not agree as to the construction of a guaranty, some cases holding that they are to be taken *strictissimi juris,* while others contend for a liberal interpretation.

In view of the fact that they are hurriedly drawn, and by those inexperienced in legal matters the latter is perhaps the most correct rule of the two; and to it this court has inclined, it being understood that a liberal construction does not mean that the words of the guaranty are to be forced out of their natural meaning, but

are to be taken according to the intent and purposes of the parties to it.

Indeed, the true rule is, that like any other writing, it is to be interpreted in the light of the intent of the parties and the purposes designated by them. If it be a continuing guaranty, notice of the various transactions need not be given the guarantor; and when he undertakes that a third party shall pay, or that in case of a default he will pay, he is not entitled to notice of default, nor is any demand of payments of the principal necessary.

Let us now apply these general rules to this particular case. The guaranty in question was a continuing one, and unlimited save as to amount.

Dye Bros. were the sons of appellee, and the object of the guaranty was to give them a standing credit for use from time to time and without limit as to period. It contemplated a series of transactions, in the usual course of business. The testimony tends to show that payment was to be made when Dye Bros. & Co. made their sales and collections, or when a reasonable time had elapsed, and there was a failure to collect, and the parties to the guaranty must have understood from this, that the exact time of payment was thereafter to be fixed by the appellants, and Dye Bros. & Co.

The lower court found as one of its conclusions of fact, that when the notes were given, it was known that the debts owing to Dye Bros. & Co. upon their sales were worthless; but the testimony does not sustain the finding. If it did, then it would appear, that when the notes were taken, the time fixed for payment had arrived. There could be no liability on the part of the guarantor until there was a default by the principal. This could not occur until the time fixed for payment had elapsed, or if none had been named then not until the end of a reasonable time, and as the understanding was, that payment was to be made, when Dye Bros. & Co. made their sales and collections, there was no default when the notes were given, because sixty and ninety days were then needed to enable them to do so; and then for the first time a definite time was fixed for payment and it did not elapse until the notes matured. The testimony authorizes the conclusion that the word "due" in the contract of guaranty must be held to be equivalent to the word "owing"; and the guarantor having left it to the creditor and principal debtors to fix the time of payment, no new contract was made by their doing so.

The testimony also tends strongly to show that the appellee with a knowledge of and after the execution of the notes recognized his liability, and informed the attorney of the appellants that he would see how he could "arrange it" and if a guarantor after "a gift of time" by the creditor to the principal debtor, and with a full knowledge of the facts, promises to pay, he is liable upon the original obligation; but aside from this and for the reasons above stated we are of the opinion that the appellee was not released by the execution of the notes.

As a new trial must be had in the lower court (the action being an ordinary one) it is proper to notice another question in order that this controversy may sooner reach an end. The guaranty in question did not contemplate any liability of Dye, Bros. & Co. to the appellants of a date prior to its execution. The appellee was compelled by the court below to elect whether he would rely upon the alleged release by the execution of the notes or the defence that the plaintiffs claim was for sales made to Dye Bros. & Co. prior to the giving of the guaranty and that the appellants paid for all purchases of a subsequent date. We fail to see that the defences were inconsistent; and upon a return, the appellee should be permitted to rely upon that last named if he desires to do so; and the judgment is reversed for further proceedings consistent with this opinion.

Judgment *reversed.*

*Hallam & Perkins, for appellants.*

*Nelson & Washington, and R. H. Gray, for appellee.*